# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES LEWIS, *individually and on behalf of all others similarly situated*,<br>　1901 E Street SE<br>　Washington, DC 20003<br><br>　　*Plaintiff-Petitioner,*<br><br>　　v.<br><br>UNITED STATES PAROLE COMMISSION<br>　90 K Street NE, 3rd Floor<br>　Washington, DC 20530<br><br>PATRICIA K. CUSHWA, *in her official capacity as Acting Chairman of the United States Parole Commission*<br>　90 K Street NE, 3rd Floor<br>　Washington, DC 20530<br><br>MICHELE JONES, *in her official capacity as Deputy Warden of the Correctional Treatment Facility*<br>　1901 E Street SE<br>　Washington, DC 20003<br><br>　　*Defendants-Respondents*. | No.  22-2182 |

## CLASS ACTION COMPLAINT FOR MANDAMUS AND INJUNCTIVE RELIEF

Plaintiff Charles Lewis, on behalf of a class of similarly situated parolees in the District of Columbia, alleges as follows:

## PRELIMINARY STATEMENT

1.　　Plaintiff Charles Lewis is a 65-year-old District of Columbia parolee who has been released on parole under the authority of respondent the United States Parole Commission (the "Parole Commission") since January 27, 2014, for a total of eight years and six months. By law,

the Parole Commission "*shall*" terminate the parole of any parolee five years after their release on parole, "*unless* the Commission determines, after a hearing, that legal custody of the parolee should not be terminated because there is a likelihood that the parolee will violate any criminal law." D.C. Code § 24-404(3); *see also* 28 C.F.R. § 2.95(c). The Parole Commission has never held a hearing or determined that Mr. Lewis's parole should be continued; in fact, a hearing examiner from the Commission has recommended his parole be terminated. Yet, the Commission has nonetheless unlawfully continued Mr. Lewis's parole for three and a half years *beyond* the five-year period prescribed by statute.

2. In this time, Mr. Lewis's health has drastically declined: A stroke in April of 2019 left him partially paralyzed, wheelchair bound, and with other long-term disabling consequences such as trouble speaking, memory issues, and difficulty swallowing. After a period of homelessness and living in a hotel, in April of 2022 Mr. Lewis obtained stable subsidized housing where he receives the help of a home health aide who assists him with activities of daily living, such as grooming, dressing, bathing, moving to and from the toilet, and moving between his bed and wheelchair.

3. Since his presumptive termination date in January of 2019, Mr. Lewis has made multiple requests for termination of his parole, which he is entitled to receive if the Commission does not hold a hearing and make the requisite findings. Individual Parole Commission examiners have also repeatedly acknowledged the need to either terminate his parole or provide a termination hearing, both due to the length of time he has been released as well as his debilitating medical conditions, including partial paralysis, that make adhering to the administrative requirements of parole nearly impossible. One examiner even indicated that Mr. Lewis should "receive a

termination hearing and/or be terminated from parole," that he is "medically unable to comply with supervision," and is "not a threat." Ex. A, at 6 (January 2020 Probable Cause Hearing Digest).

4. Despite the statutory requirement, the Parole Commission has neither terminated his parole nor conducted a hearing to determine whether Mr. Lewis, who is unable to perform daily tasks without assistance, is likely to engage in criminal conduct and requires further supervision. Instead, the Parole Commission now seeks to revoke Mr. Lewis's parole due to administrative violations that are the result of his debilitating medical condition.

5. Mr. Lewis is currently detained at the D.C. Jail as a result of the Commission's recent attempt to revoke his parole due to alleged administrative violations[1] of his parole.

6. While detained at the jail, and since his arrest on June 24, 2022, Mr. Lewis has not received the assistance he needs to bathe or change his clothing. He has only received one shower, when a correctional officer wheeled him into the shower and then left him to bathe and change himself without assistance.

7. Further, in April of 2022, after a period of homelessness, Mr. Lewis obtained stable housing which he risks losing due to his current unlawful incarceration.

8. The Parole Commission's disregard of Mr. Lewis's rights after five years of parole supervision is not unique.

9. The Parole Commission systematically disregards its duty to ensure that, after five years of supervision, D.C. parolees are only continued on parole after a hearing at which the

---

[1] Administrative violations, as opposed to criminal conduct that violates the law, involve the failure to comply with the terms of release, such as failure to report a change in address, failure to submit to drug testing, or failure to report to a supervision officer as required.

Commission determines that the parolee is likely to "engage in conduct violating any criminal law." D.C. Code § 24-404(3); *see also* 28 C.F.R. § 2.95(c).

10. Plaintiff and proposed class therefore seek a writ of mandamus compelling the Parole Commission's compliance with its statutory and regulatory obligations.

11. In the alternative, Plaintiff and proposed class seek injunctive relief compelling the Commission's compliance with its statutory and regulatory obligations.

12. Mr. Lewis also seeks a writ of habeas corpus, as his current detention pending a parole revocation hearing is solely the result of the Parole Commission's unlawful continued supervision.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this mandamus action pursuant to 28 U.S.C. § 1361, which gives the district courts of the United States "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Under the law of this Circuit, mandamus is the only appropriate remedy to compel the Parole Commission's compliance with the timing provisions of its statue and regulations. *See Sutherland v. McCall,* 709 F.2d 730, 732 (D.C. Cir. 1983); *Nelson v. Williams*, 750 F. Supp. 2d 46, 51 n.5 (D.D.C. 2010).

14. This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 2241.

15. Venue in this court is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

16. Petitioner Charles Lewis is a 65-year-old resident of the District of Columbia. He is on parole pursuant to D.C. Superior Court sentences for burglary II and armed robbery from

4

1993. He is currently incarcerated at the D.C. Jail pursuant to a parole violator warrant and a subsequent probable cause finding issued by Respondent.

17. Defendant United States Parole Commission is the federal agency responsible for the administration of parole for D.C. parolees, including decisions regarding the continuation or termination of their parole. On August 5, 2000, pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33 § 11231(a)(2), 111 Stat. 712, 745, ("Revitalization Act"), it assumed the duties and jurisdiction of the District of Columbia Board of Parole. *See Long v. Gaines*, 167 F. Supp. 2d 75, 77 (2001).

18. Defendant Patricia K. Cushwa is sued in her official capacity as Acting Chairman of the United States Parole Commission. In this capacity, Defendant Cushwa oversees the operations of the United States Parole Commission.

19. Defendant Michele Jones, Plaintiff's immediate custodian, is the Deputy Warden[2] of the Correctional Treatment Facility of the DC Jail, and is being sued in her official capacity.

## BACKGROUND

20. Charles Lewis was released to parole supervision eight and a half years ago, on January 27, 2014.

21. Since being released on parole supervision in 2014, Mr. Lewis has never had his parole revoked.

22. Pursuant to the relevant statute and regulation, there is a presumption that an individual's parole will be terminated after a maximum of five years.

---

[2] Presently, the D.C. Jail does not have a Warden, and instead has two Deputy Wardens—one for the Correctional Treatment Facility and one for the Central Detention Facility. As Mr. Lewis is housed at the Correctional Treatment Facility, he has named its Deputy Warden as a Defendant.

23. Specifically, on March 21, 2009, The Equitable Street Time Credit Amendment Act, DC Code § 24-404 and § 24-406, ("The Street Time Act") was enacted and required, along with other sentence calculation changes, that "[f]ive years after a parolee's release on parole, the Commission shall terminate legal custody over the parolee unless the Commission determines, after a hearing, that legal custody of the parolee should not be terminated because there is a likelihood that the parolee will violate any criminal law." D.C. Code § 24-404(a-1)(3). The Parole Commission incorporated these statutory requirements related to early termination into its own regulations at 28 C.F.R. § 2.95(c).

24. Therefore, extension of an individual's parole beyond the five-year mark is only permissible where the Commission makes the requisite determination at a hearing. D.C. Code § 24-404(a-1)(3); *see also* 28 C.F.R. § 2.95(c).

25. The Street Time Act further required that if parole is not terminated at the five-year mark, the Parole Commission "[m]ay conduct a hearing annually, if the parolee so requests, to determine whether to terminate legal custody of the parole," D.C. Code § 24-404(a-1)(4)(A), but regardless of whether it grants the annual termination hearing, the Commission "[s]hall conduct a hearing every 2 years to determine whether to terminate legal custody of the parolee." D.C. Code § 24-404(a-1)(4)(B); *see also* 28 C.F.R. § 2.95(c).

26. Pursuant to this law and regulation, Mr. Lewis had a right to termination of his parole in 2019, unless the Commission determined, at a hearing, that he was likely to violate any criminal law.

27. Further, had the Commission conducted a termination hearing in 2019 and decided to extend Mr. Lewis's probation, Mr. Lewis would have had the right to a rehearing two years later, in 2021. D.C. Code § 24-404(a-1)(4)(B); 28 C.F.R. § 2.95(c).

28. Yet, in this time, the Parole Commission has unlawfully continued Mr. Lewis's parole without ever deciding at a hearing that he is likely to violate any criminal law.

29. To the contrary, for years hearing examiners from the Parole Commission have repeatedly acknowledged that Mr. Lewis's parole should be terminated, yet the Commission has nonetheless continued his parole unlawfully and without explanation.

30. Specifically, in the time that he has been continued on parole unlawfully and without a termination hearing, he has been arrested on Parole Commission violator warrants three times for alleged violations of his supervised release: on January 29, 2020, May 29, 2020, and on June 24, 2022. At each probable cause hearing following arrest, hearing examiners from the Parole Commission recommended Mr. Lewis both be released from custody, and in at least two of these three hearings the examiners recommended that Mr. Lewis be terminated from parole or scheduled for a termination hearing.

31. At his January 2020 probable cause hearing, for example, Mr. Lewis denied the five administrative violations lodged against him. The hearing examiner acknowledged that Mr. Lewis had suffered a stroke, and as a result was paralyzed and had other long-term disabling consequences such as trouble speaking and memory issues. *See* Ex. A, at 6 (January 2020 Probable Cause Hearing Digest). The hearing examiner recommended Mr. Lewis's release and that "he receive a termination hearing and/or be terminated from parole[.]" The examiner found that Mr. Lewis is "medically unable to comply with supervision," that he is "not a threat," and that he was in compliance with parole prior to his stroke. *See id*.

32. On February 5, 2020, the Commission issued a Notice of Action releasing Mr. Lewis and reinstating him to supervision, but it was silent to the issue of his termination. Ex. B (February 5, 2020 Notice of Action).

33. On April 28, 2020, following Mr. Lewis' release, his counsel from the probable cause hearing emailed the Commission requesting the termination of Mr. Lewis's parole. The Commission did not comply with this request or otherwise respond to the request for termination of Mr. Lewis's parole.

34. A few months later, on May 21, 2020, the Commission issued a warrant alleging Mr. Lewis had violated a protective order. Mr. Lewis was arrested on the warrant on May 29, 2020 and had a probable cause hearing on June 2, 2020. At the probable cause hearing, Mr. Lewis's counsel supplied evidence to the Commission that the allegations against Mr. Lewis were an uncorroborated attempt to remove him from his recently deceased common law wife's home. The Commission released Mr. Lewis and reinstated him to supervision.

35. On June 21, 2022, the Commission again issued a violator warrant for Mr. Lewis, alleging only administrative violations of his parole. Mr. Lewis was arrested on this warrant on June 24, 2022, and given a probable cause hearing on July 1, 2022.

36. A third hearing examiner again saw evidence of Mr. Lewis's incapacitated state as well as evidence that after sleeping in metro stations throughout the COVID-19 pandemic, Mr. Lewis had recently obtained handicap-accessible housing—stability that he was at risk of losing with continued incarceration. The hearing examiner at the probable cause hearing acknowledged the previous probable cause hearings and the recommendations for termination of supervision, and again recommended Mr. Lewis's release from custody, termination of the revocation process, and that a parole termination process be commenced. *See* Ex. C, at 6 (July 2022 Probable Cause Hearing Digest).

37. On July 6, 2022, despite Mr. Lewis's health issues, his risk of losing stable housing should he remain incarcerated, and the unlawfulness of his continued parole, the Commission

issued a non-appealable Notice of Action overruling the examiner's determination, and ordering Mr. Lewis held in custody pending a revocation hearing. *See* Ex. D (July 6, 2022 Notice of Action). It was again silent on the issue of termination of parole.

38. Mr. Lewis's local revocation hearing has been scheduled for August 3, 2022. Pursuant to the Commission's determination, Mr. Lewis will be held at the D.C. Jail until his final revocation hearing.

39. Mr. Lewis had a stroke three years ago and suffers from paralysis, nerve pain, difficulty swallowing, type 2 diabetes, high blood pressure, and high cholesterol. Mr. Lewis requires the assistance of a home health aide to complete daily tasks such as cooking, dressing, and bathing himself. He has not received the assistance he needs to bathe or change his clothing since his arrest on June 24, 2022, and is at serious risk of further injury. His incarceration represents a severe threat to his fragile medical situation, an unreasonable threat to life from the COVID pandemic, and carries the risk that he will be removed from his handicap-accessible housing unit and medical aid who assists with his Activities of Daily Living.

40. On July 18, 2022, Mr. Lewis's counsel sent a written request to the Acting Chairman of the Parole Commission to release Mr. Lewis from custody, based on his fragile medical condition, danger of losing his housing, and the Commission's failure to uphold its statutory duty to grant Mr. Lewis a termination hearing.

41. On July 19, 2022, the Parole Commission issued another Notice of Action again denying release. Ex. E (July 19, 2022 Notice of Action).

42. Further, rather than release Mr. Lewis from custody or terminate Mr. Lewis's parole, and despite a previous finding that Mr. Lewis is medically unable to comply with supervision, the Commission has proposed an expedited revocation process whereby Mr. Lewis

9

would agree to serve three months in the D.C. jail for the alleged administrative violations of his parole.

43. The Commission's disregard of its duties relating to parolees on supervision after five years extends beyond Mr. Lewis's case.

44. Despite the mandatory language in the statute and regulation requiring that parole only be continued beyond five years after a hearing where the requisite finding is made, the Parole Commission does not typically schedule termination hearings after five years of supervision unless the individual parolee submits a form specifically requesting such a hearing.

45. Further, the Commission does not even provide parolees with this form or inform them systemically of their right to termination or a hearing after five years.

46. Instead, parolees generally rely on their individual supervision officers to inform them of their right to either termination or a termination hearing after five years, as well as the provision of this form requesting such a hearing. Where individual supervision officers fail to provide such information to those they are supervising, the Commission does not ensure that this failure is corrected.

47. Further, the Commission and parolees' supervision officers often ignore requests for termination hearings, such as the April 2020 request for a termination hearing made via email in Mr. Lewis's case, when they are made separate from the Commission's form, which parolees are not required by regulation or statute to use.

48. The Commission has even explicitly refused to schedule termination hearings after counsel for parolees have specifically requested termination hearings long after the five-year mark.

49. As a result of the Commission's unlawful policies and practices, individuals often remain on parole for many years beyond the statutorily-prescribed five-year mark without a hearing and determination that there is a likelihood they will violate any criminal law.

50. This violation of law harms proposed class members. While on parole, individuals are subject to onerous requirements that curtail their liberty and risk their return to prison without the full procedural protections provided to free citizens. *See Jones v. Cunningham*, 371 U.S. 236, 242 (1963).

## **CLASS ALLEGATIONS**

51. Pursuant to Fed. R. Civ. P. 23(b)(1) and 23(b)(2), Plaintiff brings this action as a class consisting of all District of Columbia code offenders whose parole the Commission has unlawfully continued for longer than five years without a hearing and determination by the Parole Commission that there is a likelihood they will violate any criminal law.

52. Plaintiff reserves the right to amend the class definitions or to establish sub-classes as appropriate if discovery or further investigation reveals that the class should be expanded or otherwise modified.

53. Numerosity: The class is so numerous that joinder is impracticable. While the precise size of the class is unknown, upon information and belief, dozens of people are still on parole after five years despite not having had a hearing and determination by the Parole Commission that there is a likelihood they will violate any criminal law. And at any given time, there are numerous individuals whose parole has continued longer than five years without a hearing and determination by the Parole Commission that there is a likelihood they will violate any criminal law. *See* Ex. F (Edmonson Decl.).

54. Joinder is also inherently impracticable because the number of unnamed, future class members is unknown and will continue to rise as parolees surpass the five-year mark.

55. Joinder is impracticable because proposed class members are highly unlikely to file individual suits on their own behalf given the practical barriers, including their own indigency, that prevent their ability to file suit.

56. Commonality: The claims of the class share common issues of law, including but not limited to whether the Parole Commission's failure to terminate parole after five years without holding a hearing and determining that the individual is likely to violate a criminal law violates its statutory and regulatory command.

57. Typicality: The claims of Plaintiff Lewis are typical to the class: he has been on parole for more than five years without a hearing and determination that he is likely to violate any criminal law.

58. Adequacy: Plaintiff Lewis is an adequate class representative who meets all of the requirements of Rule 23(a)(4). He has no conflict of interest with other class members, will fairly and adequately protect the interests of the class, and understands his responsibility as a class representative. Counsel for Plaintiff has experience litigating class actions before this Court and with the factual and legal issues associated with this case.

59. The Commission has acted, and will act, on grounds generally applicable to the class, thereby making mandamus relief appropriate as to the class as a whole. A writ of mandamus or injunctive relief will benefit all class members. The class may therefore properly be certified under Fed. R. Civ. P. 23(b)(2).

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
**WRIT OF MANDAMUS, 28 U.S.C. § 1361**
**On Behalf of All Class Members**
**Against Defendants United States Parole Commission and Patricia K. Cushwa in Her Official Capacity**

60. Mr. Lewis and the proposed class repeat and re-allege the preceding paragraphs as if fully set forth in this Count.

61. Pursuant to 28 U.S.C. § 1361, a writ of mandamus is available to compel Defendants, who are agencies, officers, or employees of the United States, to perform a clear, non-discretionary duty to Plaintiff where no other adequate remedy is available. *See* 28 U.S.C. § 1361.

62. Mandamus "may be granted to correct transparent violations of a clear duty to act." *In re Aiken Cty.*, 725 F.3d 255, 258 (D.C. Cir. 2013) (internal quotation marks and citation omitted). Mandamus is proper when "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *Council of and for the Blind of Del. Cty. Valley v. Regan,* 709 F.2d 1521, 1533 (D.C. Cir. 1983) (en banc).

63. Plaintiff and proposed class have a clear right to relief because they have been on parole for over five years, without the Parole Commission determining, at a hearing, that they are likely to violate any criminal law.

64. As to Mr. Lewis in particular, well over three years have passed since his presumptive termination date, and the Commission has never determined, at a hearing, that Mr. Lewis's parole should be continued. D.C. Code § 24-404(a-1)(3); 28 C.F.R. § 2.95(c).

65. Prior to five years of supervision, the Commission has considerable discretion in deciding whether to terminate parole. Indeed, while the Commission is required to "review [a] parolee's status" after two years of supervision and "at least annually thereafter," the statute provides that the Commission "*may* terminate legal custody over the parolee if, in its discretion,

13

the Commission determines that continued legal custody is no longer needed." D.C. Code § 24-404(a-1)(2); *see also* 28 C.F.R. § 2.95(b) ("Two years after releasing a prisoner on supervision, and at least annually thereafter, the Commission shall review the status of the parolee to determine the need for continued supervision.").

66. Once a parolee has been on supervision for five years, however, the Commission is required to terminate the individual's parole, unless they find, at a hearing, that the individual is likely to commit further crimes in the community.

67. The statute and regulations are unequivocal on this point, providing that "[f]ive years after a parolee's release on parole, the Commission *shall* terminate legal custody over the parolee unless the Commission determines, after a hearing, that legal custody of the parolee should not be terminated because there is a likelihood that the parolee will violate any criminal law." D.C. Code § 24-404(a-1)(3) (emphasis added); *see also* 28 C.F.R. § 2.95(c).

68. The use of the language, "shall" as opposed to "may," which appears in other sections of the statute, makes plain the non-discretionary nature of terminating parole (unless the Commission follows the procedure outlined in the rest of the section). *Ass'n of Civilian Technicians, Mont. Air Chapter No. 29 v. Fed. Labor Relations Auth.*, 22 F.3d 1150, 1153 (D.C. Cir. 1994) ("The word 'shall' generally indicates a command that admits of no discretion on the part of the person instructed to carry out the directive.").

69. Further, the Parole Commission's manual, which contains notes to clarify the rules and regulations, indicates that as to parolees who have been on supervision for five years, the Commission "shall *either* (1) terminate supervision or (2) order a personal hearing with the releasee to be held locally by a hearing examiner or other official designated by the Commissioner." Parole Commission Manual, § 2.43-01(g) (emphasis added).

70. While the Commission has discretion in deciding whether parole should be continued following a hearing, the Parole Commission has no discretion to simply continue an individual's parole beyond five years without making a determination, at a hearing, that such continuation of parole is necessary. Yet that is precisely what the Parole Commission did in Mr. Lewis and the proposed class's cases.

71. The Commission therefore has a clear non-discretionary duty to terminate Mr. Lewis and proposed class members' parole.

72. Absent action by this Court, Mr. Lewis and the proposed class have no remedy to redress the Parole Commission's failure to terminate parole, and compel the Parole Commission's compliance with the timing provisions of its statute and regulations.

73. Accordingly, the Commission must be ordered to terminate Mr. Lewis and proposed class members' parole. D.C. Code § 24-404(a-1)(3).

### SECOND CLAIM FOR RELIF
### *ULTRA VIRES* ACTION
### On Behalf of All Class Members
### Against Defendants United States Parole Commission and Patricia K. Cushwa in Her Official Capacity

74. Mr. Lewis and the proposed class repeat and re-allege the preceding paragraphs as if fully set forth in this Count.

75. By its own statutes and regulations, the Commission is required to terminate parole "[f]ive years after a parolee's release on parole, the Commission shall terminate legal custody over the parolee unless the Commission determines, after a hearing, that legal custody of the parolee should not be terminated because there is a likelihood that the parolee will violate any criminal law." D.C. Code § 24-404; *see also* 28 C.F.R. § 2.95(c).

76. The Commission has acted, and continues to act, *ultra vires*—that is, the Commission has acted and continues to act in excess of its statutory and regulatory authority—by failing to terminate parole after five years without a hearing and determination that the parolee has a likelihood of violating any criminal law and unlawfully continuing its jurisdiction over Plaintiff and proposed class members.

77. Judicial review is available "to determine whether the agency has acted *ultra vires*—that is, whether it has exceeded its statutory authority." *Mittleman v. Postal Regulatory Comm'n*, 757 F.3d 300, 307 (D.C. Cir. 2014) (internal quotations omitted) (citing *Leedom v. Kyne*, 358 U.S. 184 (1958)).

78. As a result of the Commission's *ultra vires* actions, Plaintiff and proposed class members suffer injury: the continuation of their parole, a serious restraint on their liberty. *See Jones v. Cunningham*, 371 U.S. 236, 242 (1963).

**THIRD CLAIM FOR RELIEF**
**ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 500 *et seq.***
**On Behalf of All Class Members**
**Against Defendants United States Parole Commission and Patricia K. Cushwa in Her Official Capacity**

79. Mr. Lewis and the proposed class repeat and re-allege the preceding paragraphs as if fully set forth in this Count.

80. The APA requires the "reviewing court" to "hold unlawful and set aside agency action" that is "not in accordance with law," "contrary to constitutional right," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A)-(D).

81. The APA also requires that the reviewing court "shall . . . compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1).

82. The Parole Commission's failure to either terminate parole, or lawfully continue parole pursuant to a termination hearing, after a parolee has been on parole for five years is "not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," and "without observation of procedure required by law," because the Commission is required by regulation and statute to terminate an individual's parole after five year unless they hold such a hearing and make such a determination.

83. Further, the Commissions failure to hold termination hearings for individuals who remain on parole beyond the five-year presumptive termination date is "unreasonably delayed" beyond the Commission's own regulations. 5 U.S.C. § 706(1).

84. Defendants' ongoing exercise of jurisdiction over Plaintiff and proposed class members without lawfully continuing their parole beyond five years is reviewable under the APA, because Plaintiff and proposed class members' status as parolees is not tentative or interlocutory, and Defendants' actions create legal consequences.

85. Plaintiff and proposed class members have "suffer[ed]," and will "suffer[] legal wrong because" of Defendants' actions. 5 U.S.C. § 702.

### FOURTH CLAIM FOR RELIEF
### WRIT OF HABEAS CORPUS, 28 U.S.C. § 2241
### On Behalf of Mr. Lewis
### Against All Defendants

86. Mr. Lewis repeats and re-alleges the preceding paragraphs as if fully set forth in this Count.

87. Mr. Lewis is presently detained at the Correctional Treatment Facility at the D.C. Jail, where Michele Jones is Deputy Warden, and is detained pursuant to a United States Parole Commission Warrant.

17

88. Mr. Lewis is in custody unlawfully, pursuant to the Parole Commission's unlawful warrant rendered in violation of its own regulations and governing laws.

89. Mr. Lewis has been on parole for eight years and six months, well beyond his five-year presumptive termination date. Yet, the Commission has failed to terminate Mr. Lewis's parole or "determine[], after a hearing, that legal custody of [Mr. Lewis] should not be terminated because there is a likelihood that [he] will violate any criminal law." D.C. Code § 24-404(a-1)(3); *see also* 28 C.F.R. § 2.95(c).

90. Indeed, the Commission is aware that his parole has extended beyond five years without a termination hearing, and a hearing examiner for the Parole Commission has previously recommended that Mr. Lewis "receive a termination hearing and/or be terminated from parole," and the examiner concluded that he is "medically unable to comply with supervision," is "not a threat," and was in compliance with parole prior to his stroke. *See* Ex. A, at 6 (January 2020 Probable Cause Hearing Digest).

91. Accordingly, Mr. Lewis's current parole status is unlawful, as are the pending proceedings to revoke his parole.

92. As Mr. Lewis is detained solely due to Commission's unlawful efforts to revoke his parole, Mr. Lewis must be released.

93. Further, a prerequisite to continuation of parole beyond five years is a hearing "to determine the need for continued legal custody," followed by additional hearings "every 2 years to determine whether to terminate legal custody of the parolee." DC Code § 24-404(a-1)(2), (4)(B); 29 C.F.R. § 2.95(c) ("If the Commission does not terminate supervision under this paragraph … the Commission shall conduct an early termination hearing at least every two years"). The Commission's three-and-a-half-year delay in holding such a hearing is per se unreasonable.

94.     The prejudice to Mr. Lewis by such delay is similarly apparent. While the Commission has authority to terminate an individual's parole without a hearing, a timely held hearing would likely have resulted in termination of Mr. Lewis's parole, thus preventing the Parole Commission from maintaining jurisdiction over Mr. Lewis and holding him in custody pending a revocation hearing today, more than eight years after his release on parole.

95.     Habeas relief is thus appropriate. *C.f. Sutherland v. McCall,* 709 F.2d 730, 732 (D.C. Cir. 1983) (noting that habeas relief is available to an individual detained by the Parole Commission where the Commission's delay in holding a local revocation hearing is "unreasonable and prejudicial").

## RELIEF REQUESTED

96.     Mr. Lewis and the proposed class request that this Court issue a writ of mandamus against the Parole Commission ordering it to terminate the parole of Mr. Lewis and the proposed class members.

97.     Mr. Lewis and the proposed class further request that this Court issue injunctive relief requiring the Parole Commission to comply with its statutory and regulatory obligations to terminate the parole of Mr. Lewis and the proposed class members.

98.     Mr. Lewis further requests that this court enter a writ of habeas corpus requiring Defendants to release Mr. Lewis from custody.

99.     Plaintiff and proposed class members respectfully request that the Court award such further relief as the Court deems appropriate.

Dated: July 25, 2022
        Washington, D.C.

                                */s/ Hanna M. Perry*
                                Hanna Perry*

Public Defender Service for the District of Columbia
633 Indiana Avenue N.W.
Washington, D.C. 20004
Tel. 202-824-2198
Fax 202-824-2093
hperry@pdsdc.org
*Member NY Bar; Practicing in DC under
DC App. R. 49(c)(9)(B)