## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHARLES LEWIS**, *et al.*, | |
| *Plaintiffs,* | |
| **v.** | **Case No. 22-cv-2182-RCL** |
| **U.S. PAROLE COMMISSION**, *et al.*, | |
| *Defendants*. | |

## MEMORANDUM OPINION

Named plaintiffs Charles Lewis, Anthony Mack, Carlton Paige, and Darin Hagins, on behalf of a putative class of parolees in the District of Columbia, bring this action alleging that the United States Parole Commission ("USPC") has failed to comply with its statutory and regulatory obligations to either hold timely early termination hearings for parolees or else terminate their parole. USPC moves to dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted. USPC first contends that the Court lacks subject-matter jurisdiction because each of the named plaintiffs' parole has been terminated, rendering the case moot. Second, USPC argues that the plaintiffs' Administrative Procedure Act and mandamus claims are meritless because the named plaintiffs have already received the only remedy that this Court could grant, namely, scheduling a termination hearing. Third, USPC urges that plaintiffs' *ultra vires* claim is barred, both because *ultra vires* review is only permitted when no other means of relief (e.g. a claim under the APA) is available, and because an agency's failure to follow its own regulations cannot be *ultra vires*. For the reasons contained herein, the Court will **DENY** USPC's motion to dismiss plaintiffs' APA and mandamus claims, but **GRANT** it as to plaintiff's *ultra vires* claim.

1

Also pending in this case is the plaintiffs' Renewed Motion to Certify a Class, ECF No. 43-1. For the reasons explained herein, the Court will **DENY** this motion without prejudice to give plaintiffs the opportunity to conduct limited discovery as to the size of their putative class before attempting certification again.

## I. BACKGROUND

USPC is the agency that oversees the parole system for violators of D.C. and federal law. D.C. law requires that, within five years after a parolee's release on parole, the Commission must terminate the parole sentence unless it holds a hearing and determines that "there is a likelihood that the parolee will violate any criminal law." D.C. Code § 24-404(a-1)(3). If the Commission decides not to terminate parole pursuant to such a hearing, the Commission must conduct further hearings at least once every two years to determine whether termination is appropriate. D.C. Code § 24-404(a-1)(4)(B). The Commission may also hold a hearing at the parolee's request once per year. D.C. Code § 24-404(a-1)(4)(A). USPC has promulgated its own regulations duplicating these statutory requirements. *See* 28 CFR § 2.95(c).

Plaintiffs are District of Columbia parolees who allege that USPC has failed to either provide timely early termination hearings or release them from parole as required. At the time of his original class action complaint, filed in July of 2022, plaintiff Charles Lewis alleged that he had been on parole for eight years and six months without an early termination hearing. Compl. ¶ 1, ECF No. 1. An amended class action complaint filed in September 2022 added three additional named plaintiffs with similar allegations. Plaintiff Anthony Mack alleged that he had not received an early termination hearing since his 2012 re-release after a parole revocation, despite lodging multiple termination requests. Am. Compl. ¶¶ 13–14, ECF No. 22. Plaintiff Carlton Paige alleged that he had not received an early termination hearing since his re-release in 2015 after revocation. *Id.* at ¶¶ 17, 19. Plaintiff Darin Hagins alleged that he received no

termination hearing after his 2008 release on parole until 2022, when the USPC finally granted him a hearing and determined that his parole term should continue.  *Id.* at ¶¶ 20, 24.

The plaintiffs are suing USPC and its Acting Chairman, Patricia K. Cushwa, on behalf of a putative class of D.C. Code parolees who claim that USPC has not met its obligations to provide a hearing or terminate their parole.  *Id.* at ¶ 47.  Plaintiffs request either a writ of mandamus against Cushwa or an injunction against USPC ordering the defendants to terminate the parole of all class members, or both.  *Id.* at ¶¶ 83–84.

Just nine days after Lewis filed his original complaint, USPC held an early termination hearing for him and terminated his parole the following day.  Notice of Decision Regarding Plaintiff's Parole Termination Hr'g, ECF No. 13.  A similar pattern emerged for the other named plaintiffs after they were added to the amended complaint in September of 2022.  Mack was given a hearing less than a month after the amended complaint was filed, and his parole was terminated less than two months later.  Notice of Action, Mot. to Dismiss Ex. C, ECF No. 47-4; Notice of Action on Appeal, Mot. to Dismiss Ex. D, ECF No. 47-5.  Paige was granted early termination without a hearing just two days after he was named in the complaint.  Mot. to Dismiss 2, ECF No. 47-1; Certificate of Early Termination, Mot. to Dismiss Ex. B, ECF No. 47-3.  In April of 2023, the USPC terminated Hagins' parole term, despite having decided in May of the previous year that he was still at risk of reoffending.  Notice of Action, Mot. to Dismiss Ex. F, ECF No. 47-7; Certificate of Early Termination, Mot. to Dismiss Ex. G, ECF No. 47-8.

In April 2024, the plaintiffs moved to certify a class consisting of "[a]ll District of Columbia code parolees who . . . : (1) have not had their parole terminated after being on parole continuously for five years; (2) have not had a termination hearing once they reached five years; and (3) have not had a termination hearing every two years thereafter (where applicable)."  Mot.

to Certify a Class 1.  Defendants filed their opposition to this motion, ECF No. 63, to which the plaintiffs have replied, ECF No. 67.  In May 2024, defendants filed a Motion to Dismiss, ECF No. 47.  Plaintiffs submitted a response opposing the motion, ECF No. 52, to which the defendants have replied, ECF No. 64.  Both motions are now ripe for the Court's consideration.

## II.  LEGAL STANDARD

### A.  Subject Matter Jurisdiction and Mootness

A claim for dismissal based on mootness "goes to the jurisdiction of th[e] court," *Mine Reclamation Corp. v. FERC*, 30 F.3d 1519, 1522 (D.C. Cir. 1994), and is therefore "properly brought under Federal Rule of Civil Procedure 12(b)(1)."  *Friends of Animals v. Salazar*, 670 F. Supp. 2d 7, 11 (D.D.C. 2009).  In evaluating a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court must take all the well-pleaded allegations in the complaint as true, and must draw all reasonable inferences in the plaintiff's favor.  *Doe v. Wash. Metro. Area Transit Auth.*, 453 F. Supp. 3d 354, 361 (D.D.C. 2020).  However, because the Court has an obligation to independently assure itself of its subject-matter jurisdiction, the plaintiff's allegations "'will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim."  *Grand Lodge of the Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (quoting 5A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1350 (2d ed. 1987)).  Still, "[t]o prevail on its Rule 12(b)(1) motion to dismiss for lack of jurisdiction," the movant "bears the 'heavy burden' of establishing that the case is moot."  *Zukerman v. U.S. Postal Serv.*, 961 F.3d 431, 441 (D.C. Cir. 2020) (quoting *Honeywell Int'l, Inc. v. Nuclear Regul. Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010)).

"A lawsuit becomes moot . . . 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'"  *Almaqrami v. Pompeo*, 933 F.3d 774, 779 (D.C. Cir. 2019) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)).  This occurs when it

becomes "impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Loc. 100*, 567 U.S. 298, 307 (2012) (quotations omitted).

If a named plaintiff's claims become moot *after* that plaintiff has successfully certified the class, the action is not moot because the class has taken on a legal life of its own. *Sosna v. Iowa*, 419 U.S. 399, 402 (1975) (holding that a class "acquire[s] a legal status separate from the interest asserted by appellant" at the moment of certification, which sustains the class action "even though the claim of the named plaintiff has become moot"). But the default rule is that "at least one named plaintiff must keep her individual dispute live until [class] certification, or else the class action based on that claim generally becomes moot." *J.D. v. Azar*, 925 F.3d 1291, 1307 (D.C. Cir. 2019) (citing *United States v. Sanchez-Gomez*, 584 U.S. 381, 386 (2018)).

However, due to the long life cycles of class actions and the opportunities for legal gamesmanship they sometimes present, mootness doctrine has evolved two exceptions which allow a class action to proceed even if the named plaintiff's claims are mooted before certification. The first, sometimes called the "relation back" exception, "permits class actions to proceed when a named plaintiff's individual claim becomes moot only after a district court's error." *DL v. Dist. of Columbia*, 860 F.3d 713, 721 (D.C. Cir. 2017). The paradigmatic example is *United States Parole Commission v. Geraghty*, 445 U.S. 388, 395 (1980), in which a district court erroneously denied a prisoner's request for class certification in an action challenging the constitutionality of the federal parole guidelines. The plaintiff appealed the denial of class certification, but was released from prison before his appeal reached the Third Circuit, mooting his individual claim. *Id.* at 394. Nevertheless, the Court held that the plaintiff could continue pursuing the action as class representative because "when a District Court erroneously denies a procedural motion, which, if correctly decided, would have prevented the action from becoming moot, . . . the corrected ruling

5

'relates back' to the date of the original denial." *Id.* at 404 n.11.[1]  The crux of the analysis is whether the plaintiffs "had live claims when they sought certification, and but for the district court's error, could have obtained proper class certification before their individual claims became moot." *Id.*

The relation back exception is "limited . . . to cases in which the named plaintiff's claim remains live at the time the district court denies class certification." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013).  But there exists a second exception that can save class action claims that become moot *even before* the district court acts on the motion to certify a class: the "inherently transitory" exception, which "applies to claims so fleeting that 'the trial court will not have even enough time to rule' on class certification before the named plaintiff's claim expires." *DL*, 860 F.3d at 721 (quoting *Genesis Healthcare*, 569 U.S. at 76).  The exemplar of this doctrine is *Gerstein v. Pugh*, 420 U.S. 103 (1975).  In this case, plaintiffs subject to warrantless arrest filed a class action asserting a constitutional right to a hearing on probable cause for pretrial detention. *Id.* at 105–07.  The named plaintiffs were members of the class when they filed their complaint, but at the time they moved for class certification, it was no longer clear whether they were still in pretrial detention.  *Id.* at 110 n.11.  The Court nevertheless let the class action proceed, firstly because "[t]he length of pretrial custody cannot be ascertained at the outset, and it may be ended at any time," leaving it uncertain whether "any given individual . . . would be in pretrial custody long enough for a district judge to certify the class," and secondly because "the constant existence of a class of persons suffering the deprivation is certain."  *Id.*  This exception thus requires the court to make two determinations: "(i) whether the individual claim might end before the district

---

[1] The D.C. Circuit has held that this exception also applies where the district court's error was certification of an overly broad class.  *DL*, 860 F.3d at 721.  It is not limited to erroneous denials of class certification.

court has a reasonable amount of time to decide class certification, and (ii) whether some class members will retain a live claim at every stage of litigation." *J.D.*, 925 F.3d at 1311.  If the answer to both is yes, the named plaintiff may continue to prosecute the class action even though his or her individual claim has become moot.

### B.  APA, Mandamus, and *Ultra Vires* Review

USPC challenges plaintiffs' Administrative Procedure Act, mandamus, and *ultra vires* claims under Federal Rule of Civil Procedure 12(b)(6).  This Rule requires dismissal if a plaintiff fails to plead facts that, if accepted as true, suffice to state "a claim . . . that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), and "upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  The plaintiff must allege enough to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court considering a 12(b)(6) motion to dismiss must accept the factual allegations in the complaint as true for purposes of the motion, but need not credit legal conclusions advanced by the plaintiff.  *Id.*

The APA requires that a court shall "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1), (2)(A)–(D).  A plaintiff may challenge agency inaction under § 706(1) "only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original).  Such a mandatory duty to act may arise either from a statute or an "agency regulation[] that ha[s] the force of law."  *Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 21 (D.D.C. 2017) (quoting *Norton*, 542 U.S. at 64).

A plaintiff can also challenge agency inaction under § 706(2), which requires a court to "set aside agency action" that is "not in accordance with law," "in excess of statutory jurisdiction,

authority, or limitations, or short of statutory right," or that is undertaken "without observance of procedure required by law." Section 706(2) provides only for the review of "final agency actions." *Am. Oversight v. U.S. Dep't of Veterans Affs.*, 498 F. Supp. 3d 145, 157 (D.D.C. 2020). Final agency action is action which "mark[s] the consummation of the agency's decisionmaking process" and from which "rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks and citations omitted). Although this definition most obviously contemplates affirmative acts, a plaintiff can also challenge agency inaction under § 706(2) where the agency's "failure to act . . . is the functional equivalent of final agency action." *Hi-Tech Pharmacal Co., Inc. v. FDA*, 587 F. Supp. 2d 1, 10 (D.D.C. 2008). Specifically, when an agency is "under an unequivocal statutory duty to act, failure so to act constitutes, in effect, an affirmative act that triggers 'final agency action' review." *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001) (quoting *Sierra Club v. Thomas*, 828 F.2d 783, 793 (D.C. Cir. 1987)).

In addition to their APA claim, plaintiffs seek a writ of mandamus pursuant to 28 U.S.C. § 1361, which authorizes the Court "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." "The standards for challenging agency inaction under the APA and the Mandamus Act are the same." *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 90 (D.D.C. 2022); *see also Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010) (describing the standards for "compel[ling] delayed agency action under the APA" and through mandamus as "essentially the same"); *In re Core Commc'ns Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) ("The central question in evaluating 'a claim of unreasonable delay' [under the APA] is 'whether the agency's delay is so egregious as to warrant mandamus.'") (quoting *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984)).

Finally, plaintiffs seek *ultra vires* review, which is available to correct agency action taken in excess of the agency's statutory authority.  *See Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 189–90 (D.C. Cir. 2006).  *Ultra vires* review is an extraordinary cause of action that has repeatedly been described as "extremely limited [in] scope."  *See, e.g.*, *Changji Esquel Textile Co. Ltd. v. Raimondo*, 40 F.4th 716, 721–22 (D.C. Cir. 2022) (quoting *Griffith v. FLRA*, 842 F.2d 487, 493 (D.C. Cir. 1988)).  It is reserved for those rare situations where an agency "disregard[s] a specific and unambiguous statutory directive, or . . . violate[s] some specific command of a statute . . . . Garden-variety errors of law or fact are not enough." *Griffith*, 842 F.2d at 493 (internal quotations and citations omitted).  To successfully plead a claim for *ultra vires* review, a plaintiff must show that "(i) there is no express statutory preclusion of all judicial review; (ii) 'there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory[.]'" *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 763 (D.C. Cir. 2022) (quoting *Nyunt v. Chairman, Broad. Bd. Of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009)).  *Ultra vires* review is available to challenge both agency action and inaction.  *See, e.g.*, *Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.*, 26 F.4th 960 (D.C. Cir. 2022) (holding that plaintiffs stated an *ultra vires* claim by alleging an agency failed to perform a mandatory duty of consultation).

### C.  Certifying a Class

Rule 23 of the Federal Rules of Civil Procedure provides the conditions that must be met for a district court to certify a class.  First, pursuant to Rule 23(a), the party moving for class certification must show that:

> "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the

representative parties are typical of the claims or defenses of the class, and (4) the

representative parties will fairly and adequately protect the interests of the class."

Fed. R. Civ. P. 23(a).  If all these requirements are met, the putative class must still fit into one of

the Rule 23(b) categories.  As relevant here, Rule 23(b)(2) requires that "the party opposing the

class has acted or refused to act on grounds that apply generally to the class, so that final injunctive

relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ."  Fed.

R. Civ. P. 23(b)(2).

"Rule 23 does not set forth a mere pleading standard."  *Wal-Mart Stores, Inc. v. Dukes*,

564 U.S. 338, 350 (2011).  Class certification, in other words, demands more of a plaintiff than is

required to survive a motion to dismiss under Rule 12(b)(1) or 12(b)(6): "A party seeking class

certification must affirmatively demonstrate his compliance with the Rule," which requires the

court to conduct a "'rigorous analysis' [that] will entail some overlap with the merits of the

plaintiff's underlying claim."  *Id.* at 351 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147,

161 (1982)).  Although the D.C. Circuit has not yet articulated a precise standard of proof, the

emerging consensus in this district and among the courts of appeals is that the movant must prove

each element of Rule 23 by a preponderance of the evidence.[2, 3]

---

[2] See *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008) (Scirica, C.J.); *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022) (en banc) (collecting cases); *Brown v. Kelley*, 609 F.3d 467, 476 (2d Cir. 2010) (Sack, J.); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 287 F.R.D. 1, 22 (D.D.C. 2012) (Friedman, J.), *vacated on other grounds*, 725 F.3d 244 (D.C. Cir. 2013); *Attias v. CareFirst, Inc.*, 346 F.R.D. 1, 6 (D.D.C. 2024) (Cooper, J.); *Healthy Futures of Tex. v. Dep't of Health and Hum. Servs.*, 326 F.R.D. 1, 5 (D.D.C. 2018) (Brown Jackson, J.).

[3] Although not pertinent here, the Court notes one exception to this consensus view: If some objective legal standard applies in common to the entire class and will be dispositive of each plaintiff's success on the merits, plaintiffs need not prove that standard is met at the class certification stage.  *See Amgen Inc. v. Conn. Retirement Plans & Tr. Funds*, 568 U.S. 455, 459–60 (2013) (plaintiffs in a securities fraud suit need not show at the class certification stage that the defendant's alleged misrepresentation was objectively material by a preponderance of the evidence, because materiality of misrepresentation is necessarily the same as to each putative class member and every plaintiff's claim "will prevail or fall in unison" depending on the Court's determination of materiality).

## III. ANALYSIS

### A.  Plaintiff's Claims Are Not Moot Because They Are Inherently Transitory

This Court has subject matter jurisdiction to hear plaintiffs' claims.  USPC's protests notwithstanding, plaintiffs' class action claims fit neatly into the mootness exception for inherently transitory claims, as articulated by the D.C. Circuit in *J.D.*

Plaintiffs have set forth adequate factual allegations which, accepted as true for purposes of this motion, satisfy both requirements of the "inherently transitory" standard.  First, any named plaintiff's "individual claim might end before the district court has a reasonable amount of time to decide class certification."  *J.D.*, 925 F.3d at 1311.  True, each of the four named plaintiffs in this case allegedly went several years without receiving their parole hearing, plenty of time for a court to rule on a motion for class certification.  But more significant is the fact that, once named as a plaintiff, each of the four parolees had their parole terminated within about six months.  Opp'n to Mot. to Dismiss 5–6, ECF No. 52.  In fact, two of the four plaintiffs had their parole terminated in fewer than ten days—too short a time frame even to receive full adversarial briefing on a motion for class certification, let alone rule on one.  *See J.D.*, 925 F.3d at 1311 (applying the "inherently transitory" exception to claims which lasted 40–90 days on average).  Interpreting these circumstances charitably to the government,[4] it is "impossible to predict," *ex ante*, the lifespan of

---

[4] Plaintiffs also hint at a less charitable interpretation of the facts: the lifespan of a claim against the USPC is *entirely* predictable, because the agency is deliberately picking off named plaintiffs one-by-one to avoid judicial scrutiny, behavior which other circuits have recognized as either a species of the "relation back" exception or a distinct mootness exception unto itself.  *See, e.g., Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1050 (5th Cir. 1981) (holding that the relation-back exception encompasses scenarios where named plaintiffs "could individually be 'picked off' before class certification"); *Wilson v. Gordon*, 822 F.3d 934, 947–51 (6th Cir. 2016) (discussing and applying the "picking off" exception); *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091 (9th Cir. 2011) (holding that the relation back exception applies where "a defendant seeks to 'buy off' the small individual claims of the named plaintiffs"); *Richardson v. Bledsoe*, 829 F.3d 273, 286 (3d Cir. 2016) (recognizing the "picking off" mootness exception and explaining that it has not been abrogated by *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016)).  In this same vein, at least one court in this district has stated that a class action should not be dismissed as moot where the government tries "to avoid judicial scrutiny by mooting the claims of the [plaintiffs]."  *P.J.E.S. v. Wolf*, 502 F. Supp. 3d 492, 509 (D.D.C. 2020).  Because plaintiffs' claims satisfy the "inherently transitory" exception, the Court

any would-be plaintiff's claim. *Thorpe v. Dist. of Columbia*, 916 F. Supp. 2d 65, 67 (D.D.C. 2013). This being the case, it is irrelevant—at least at the motion to dismiss stage—that the named plaintiffs' claims happen to have expired before class certification. Article III does not require would-be class members with claims of varying and unknown longevity to correctly prophesize when each one will expire. *See id.* (holding that named plaintiffs with moot claims may continue to prosecute a class action under the inherently transitory exception, even if there are other "individuals whose claims will not expire within the time it would take to litigate their claims," if "there is no way for plaintiffs to ensure that the Named Plaintiffs will be those individuals").

Plaintiffs' allegations also satisfy the second requirement of the mootness exception for inherently transitory claims because some members of the putative class will have a live claim throughout the litigation. USPC argues that plaintiffs have failed to meet this standard, firstly because the plaintiffs have not adduced evidence that any other plaintiffs with live disputes exist, and secondly because the proposed class would encompass some parolees who are no longer entitled to a hearing (for example, because their parole has since been revoked). Reply 4–5, ECF No. 64. Both objections miss the mark.

As for the first, the amended complaint includes a Declaration by Rashida Edmondson, the Chief of the Parole Division at the D.C. Public Defender Service, which avers that she and the lawyers whom she supervises represent clients whose termination hearings have been unlawfully withheld. Decl. of Rashida Edmondson ¶¶ 1–4, Am. Compl. Ex. A, ECF No. 22-1. Although the plaintiffs have not identified a potential plaintiff with a live dispute, they have adduced testimony—by someone who ought to know—that such people exist. It is noteworthy that a

---

need not discuss the "picking off" exception, which "has not been considered by the D.C. Circuit," in any further detail. *Gomez v. Trump*, No. 20-cv-01419-APM, 2020 WL 3429786, at *10 (D.D.C. June 23, 2020).

foundational case for the "inherently transitory" exception unfolded under similar circumstances: the *Gerstein* Court permitted a class action to proceed in spite of the named plaintiffs' moot claims because "[t]he attorney representing the named respondents is a public defender, and we can safely assume that he has other clients with a continuing live interest in the case." *Gerstein*, 420 U.S. at 110 n.11.[5] Ms. Edmondson's experience and testimony is enough, at the motion to dismiss stage, to constitute a plausible allegation that at least some class members with live claims will exist throughout the litigation. Am. Compl. ¶ 28. Whether the plaintiffs have met their burden to show by a preponderance of the evidence that enough potential class members exist to satisfy Rule 23's numerosity requirement is another matter, with which the Court will engage later in this opinion.

As for USPC's second argument, that the proposed class would sweep too broadly, the defendants have provided the Court with no reason why this ought to matter in deciding the plaintiffs' motion to dismiss. The test for the "inherently transitory" exception does not require the Court to conduct a preliminary probe into the ultimate viability of the proposed class when deciding a motion to dismiss, *see J.D.*, 925 F.3d at 1311 (articulating the two-prong test for the "inherently transitory" exception), and the Court declines to conjure up an additional hurdle for

---

[5] This is not to say, of course, that class representation by a public defender automatically suffices to meet the second prong of the "inherently transitory" analysis. For example, in *Davis v. United States Parole Commission*, No. 20-cv-2897-APM, 2021 WL 5758820 (D.D.C. Dec. 3, 2021), the court dismissed a similar class action complaint challenging the USPC's failure to hold timely local revocation hearings for parolees who have been retaken for parole violations. However, in that case, the only indication that a class of people with live claims existed was the *plaintiffs' own assertion*, "upon information and belief . . . that over a dozen people" existed who would qualify as class members. Compl. ¶ 64, ECF No. 1, *Davis v. U.S. Parole Comm'n*, No. 20-cv-2897-APM, 2021 WL 5758820 (D.D.C. Dec. 3, 2021). Since plaintiffs relied on a bare postulation, it made no difference that plaintiffs' counsel happened to be a public defender. *Davis*, 2021 WL 5758820, at *5. But *Gerstein* teaches that the "inherently transitory" exception does not require metaphysical certainty that there are other unnamed plaintiffs with live claims to constitute the class. The instant case differs from *Davis* insofar as plaintiffs are not only represented by a public defender, but have also proffered the testimony of a *different* public defender who is uniquely well-positioned to speak to the existence of other parolees eligible for class membership. In the Court's estimation, this additional factor lends plaintiffs' allegations sufficient substance to survive a 12(b)(1) challenge.

the plaintiffs now.[6]  This argument is pertinent to the class certification motion, as the Court will explain below, but has no bearing on the mootness analysis.

Moving past the *J.D.* test, USPC has a final arrow in its mootness quiver.  It contends that plaintiffs' stance is internally contradictory: how can plaintiffs attack the USPC for unreasonable delay, while their mootness defense rests on the possibility that the plaintiffs' claims could be resolved at any moment?  At least one court in this district has held that a plaintiff's "claim of unreasonable delay is fundamentally at odds with the application of the [inherently transitory] exception: on the one hand, plaintiffs claim that defendants are acting too slowly; on the other, they argue that the plaintiffs' claims do not last long enough."  *Kang v. Dep't of Homeland Sec.*, No. 21-cv-2944-RJL, 2022 WL 4446385, at *4 (D.D.C. Sept. 23, 2022) (Leon, J.).

But USPC's analogy to *Kang* is unavailing for three reasons.  First, *Kang* did not rely solely on this apparent contradiction to dismiss the case, noting also that the challenged action in that case, "agency adjudication of applications for employment authorization," differs from "the criminal and immigration detention contexts in which the [inherently transitory] exception was created."  *Id.*  This Court concurs in that assessment: The paradigmatic applications of the "inherently transitory" exception include challenges to pretrial detention procedures, detention

---

[6] Defendants cite *Hinton v. Dist. of Columbia*, 567 F. Supp. 3d 30, 47 (D.D.C. 2021), for the proposition that "if there is no certifiable class, the inherently transitory exception to mootness *a fortiori* cannot apply."  If by this the defendants mean that the Court may not rule on the applicability of a mootness exception until after it has finally determined that the class is certifiable, they are mistaken.  *See, e.g.*, *J.D.*, 925 F.3d at 1312 (holding that the "inherently transitory" exception applied *before* addressing whether the class was properly certified); *Ramirez v. U.S. Immigr. & Customs Enf't*, 338 F. Supp. 3d 1, 36 (D.D.C. 2018) (holding that the "inherently transitory" exception applied before deciding that the putative class satisfied Rule 23); *DL*, 860 F.3d at 722–23 (holding that the "relation back" exception applied before affirming class certification); *Thorpe*, 916 F. Supp. 2d at 67 (holding that the "inherently transitory" exception applied without ruling on class certification).  It would be especially odd for the defendants to take this position now, given that they previously asked the Court to rule on the motion to dismiss before ruling on the motion to certify a class.  *See* Motion to Stay, ECF No. 48.  As the Court will explain, the motion for class certification will be denied without prejudice so that plaintiffs may try again after taking discovery as to the size of the putative class.  If the class is not certifiable after this discovery is complete, then the "inherently transitory" exception will be inapplicable, but this hypothetical eventuality does not dictate the Court's jurisdiction to resolve the motion to dismiss now before it.

pending removal proceedings, and detention of asylum seekers. *See, e.g.*, *Cnty. Of Riverside v. McLaughlin*, 500 U.S. 44 (1991) (pretrial detention); *Nielsen v. Preap*, 586 U.S. 392 (2019) (detention pending removal proceedings); *Mons v. McAleenan*, No. 19-cv-1593-JEB, 2019 WL 4225322, at *6 (D.D.C. Sept. 5, 2019) (detention of asylum seekers). Parole termination hearings, which concern whether the government will continue to exercise legal custody over the parolee, bear far greater similarity to these examples than did the challenged agency conduct in *Kang*.

Second, in *Kang*, the plaintiffs' unreasonable delay claim rested on a nebulous allegation that the defendant was processing applications too slowly, whereas the plaintiffs in this case allege that the defendants have failed to heed an unambiguous statutory and regulatory deadline. *Kang*, 2022 WL 4446385, at *1 (explaining that the mandatory timeline which once governed the employment authorization process had been repealed before the plaintiffs brought their challenge). Third and finally, although the coexistence of an unreasonable delay claim and the inherently transitory exception may seem paradoxical at first blush, they are not inherently incompatible. Mootness doctrine must be flexible enough to recognize that a named plaintiff's claim may become moot in "[t]wo ways . . . . Gradually, then suddenly." Ernest Hemingway, *The Sun Also Rises* 136 (1926).

The named plaintiffs have made a showing sufficient for the motion to dismiss stage that their claims have an unpredictable and potentially very short shelf life, and that there are others like them who will have live claims throughout the dispute if their proposed class is ultimately certified. They have therefore satisfied the requirements of the "inherently transitory" exception, and their class action complaint may proceed even though their individual claims are moot.

**B. Plaintiffs Have Plausibly Alleged a Claim Under the APA**

The Court now turns to USPC's arguments under Federal Rule of Civil Procedure 12(b)(6), beginning with its opposition to plaintiffs' APA claims.  Because the plaintiffs have plausibly alleged claims under the APA for which relief can be granted, the Court will deny USPC's motion to dismiss as to these claims.

The Court need not dwell long on whether plaintiffs have made out a plausible unreasonable delay claim under § 706(1), under which "the court may review inaction if the agency has violated a statutory deadline or otherwise fails 'to take a *discrete* agency action that it is *required to take*.'"  *Kaufman v. Gonzalez*, No. 05-cv-1631-RWR, 2006 WL 1725579, at *6 (D.D.C. June 20, 2006) (quoting *Norton*, 542 U.S. at 63–64 (emphasis in original)), *rev'd on other grounds sub nom. Kaufman v. Mukasey*, 524 F.3d 1334 (D.C. Cir. 2008).  The D.C. statute and USPC regulations plainly prescribe a deadline for scheduling termination hearings, by which the USPC allegedly did not abide.  Furthermore, USPC's alleged failure to abide by its "unequivocal statutory duty to act," *Cobell*, 240 F.3d at 1095, is the "functional equivalent of final agency action," *Hi-Tech Pharmacal Co.*, 587 F. Supp. 2d at 10, which may be challenged under § 706(2). Indeed, USPC does not bother arguing that its alleged failure to schedule early termination hearings is somehow compliant with its statutory and regulatory obligations.

Rather, USPC argues that plaintiffs' APA claims must be dismissed because the Court cannot grant the plaintiffs' requested relief.  First, USPC notes correctly that the appropriate remedy for failure to schedule a timely termination hearing is an order directing USPC to schedule a hearing, rather than to terminate parole. *See Robinson v. U.S. Parole Comm'n*, No. 11-cv-1037-CKK, 2011 WL 5828334, at *2 (D.D.C. Nov. 18, 2011) (holding that the court "would lack jurisdiction to order . . . the termination of plaintiff's parole and his release from custody" even if

the plaintiff's claims were not moot) (citing *Sutherland v. McCall*, 709 F.2d 730, 732 (D.C. Cir. 1983)); *see also Squire v. Fulwood*, No. 13-cv-0202-KBJ, 2013 WL 6171594 (D.D.C. Nov. 26, 2013) (holding that a delayed parole revocation hearing "'is not itself a valid ground for immediate release,' and instead a parolee's 'remedy . . . is an action to compel a hearing.'") (quoting *Hill v. Johnston*, 750 F. Supp. 2d 103, 105–06 (D.D.C. 2010)); *Colts v. U.S. Parole Comm'n*, 531 F. Supp. 2d 8, 11 (D.D.C. 2008) ("The available remedy to a petitioner whose revocation hearing is untimely is a writ of mandamus directing the USPC to conduct a hearing.") (citing *Sutherland*, 709 F.2d at 732).  The Court is empowered to order termination of parole only if the plaintiffs can "establish[] that the [USPC's] delay in holding a . . . hearing was both unreasonable and prejudicial." *Colts*, 531 F. Supp. 2d at 12 (quoting *Sutherland*, 709 F.2d at 732).  Plaintiffs have not alleged that the class members have been prejudiced in any way by USPC's delay, so an order terminating parole is unavailable.

However, USPC construes the plaintiffs' prayer for relief too narrowly.  The amended complaint requests "that this Court issue a writ of mandamus against the Parole Commission ordering it to terminate the parole of Plaintiffs and the proposed class members," as well as "*such further relief as the Court deems appropriate*."  Am. Compl. ¶¶ 83, 85 (emphasis added).  While this Court may not order parole termination *en masse*, the Court may issue a class-wide injunction requiring the USPC to hold an early termination hearing within a reasonable timeframe for each class member who is owed one.  USPC's only objection to this alternative form of relief is a reassertion of its mootness argument in disguise: the named plaintiffs lack standing to seek a forward-looking injunction to hold termination hearings because they have already received hearings and had their parole terminated.  Reply 8–9.  But the plaintiffs clearly had standing when they were named in the amended complaint: they were individually and concretely injured by

USPC's failure to provide the termination hearings to which they were entitled, and sought redress which was within this Court's power to grant. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (describing the "irreducible constitutional minim[a] of standing"). And because of the "inherently transitory" exception, it is inconsequential that their personal injuries have since been resolved: they may properly continue to prosecute their claims for relief on behalf of a putative class, even if they could not do so on their own behalf. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189–92 (2000) (noting that mootness doctrine does not necessarily require that "the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence") (quoting *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.22 (1997)).

### C.  Compatibility of Mandamus, *Ultra Vires*, and APA Claims

Finally, the Court considers USPC's motion to dismiss as to plaintiffs' mandamus and *ultra vires* claims. The Court will deny this motion as to the mandamus claim, but grant it is as to the *ultra vires* claim because an *ultra vires* claim is incompatible with a well-pleaded statutory cause of action such as one under the APA.

Plaintiffs seem to have the makings of a plausible claim for mandamus relief, because the standards for compelling unlawfully withheld agency action under the APA and the Mandamus Act are essentially the same. *Ramirez*, 594 F. Supp. 3d at 90. Plaintiffs' claim to *ultra vires* review also appears plausible at first glance: there is no statute barring judicial review of USPC's failure to schedule early termination hearings, *Fed. Express Corp.*, 39 F.4th at 763, and plaintiffs plausibly allege that USPC has "disregarded a specific and unambiguous statutory directive," *Griffith*, 842

F.2d at 493.[7]  But it has long been the law in this Circuit that "[m]andamus is proper only if . . . 'there is no other adequate remedy available to plaintiff.'"  *N. States Power Co. v. U.S. Dep't of Energy*, 128 F.3d 754, 758 (D.C. Cir. 1997) (quoting *Council of and for the Blind of Del. Cnty. Valley v. Regan*, 709 F.2d 1521, 1533 (D.C. Cir. 1983) (en banc)).  Likewise, *ultra vires* review is only available where "there is no alternative procedure for review of the statutory claim."  *Fed. Express Corp.*, 39 F.4th at 763.  The question therefore arises whether a mandamus or *ultra vires* claim may co-exist with an APA claim past the motion to dismiss stage, or whether one or the other must be dismissed.

Starting with mandamus, courts in this district offer divergent views on this issue.  Some courts have held that dismissing an otherwise-well-pleaded mandamus claim due to the co-existence of a plausible APA claim is "premature" at the motion to dismiss stage, and that the court should instead wait until it "determine[es] the contours of [the APA] remedy and plaintiffs' entitlement to that remedy."  *Kirwa v. U.S. Dep't of Def.*, 285 F. Supp. 3d 257, 275–76 (D.D.C. 2018) (Huvelle, J.); *see also Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*, 219 F. Supp. 2d 20, 44 (D.D.C. 2002) (Sullivan, J.) (holding that it would be "premature and inappropriate" to dismiss a mandamus claim solely because plaintiffs had successfully pleaded an APA claim); *Citizens for Resp. and Ethics in Wash. v. Exec. Off. of the President*, 587 F. Supp. 2d 48, 63 (D.D.C. 2008) (Kennedy, J.) (declining to dismiss a mandamus claim that was "duplicative" of plaintiff's APA claim because the court could not "rule as a matter of law that plaintiffs will not be entitled to

---

[7] USPC briefly argues that plaintiffs' *ultra vires* claim is deficient because *ultra vires* review is only available for agency *action*, rather than *inaction*.  For this proposition, USPC cites *Postal Police Officers Ass'n v. U.S. Postal Serv.*, 502 F. Supp. 3d 411, 422 (D.D.C. 2020) ("[N]one of [our] decisions have placed an agency's failure to follow its own regulations in the '*ultra vires*' category[.]") (citing *Eagle Tr. Fund v. U.S. Postal Serv.*, 811 F. App'x 669, 670 (D.C. Cir. 2020)).  USPC fails to grasp the import of this quotation, which is about whether an *ultra vires* claim can be brought to remedy noncompliance with a *regulation* as opposed to a *statute*; it says nothing about the difference between agency *action* and *inaction*.  Moreover, this opinion has already identified examples of cases where an agency's failure to act as required by statute has given rise to an *ultra vires* claim.  *See, e.g.*, *Nat'l Ass'n of Postal Supervisors*, 26 F.4th 960 (holding that an agency's failure to consult could be challenged as *ultra vires*).

mandamus relief" at the motion to dismiss stage). But at least one court in this district, emphasizing the fact that mandamus is unavailable where the plaintiff has other possible remedies, has held that dismissal is appropriate. *Jafarzadeh v. Duke*, 270 F. Supp. 3d 296, 311 (D.D.C. 2017) (Bates, J.) (holding that if "plaintiffs are able to assert the same claim through the APA, they cannot obtain relief under the Mandamus Act . . . .").

However, the Court need not decide this issue today, because USPC did not raise this argument in its briefs. *See Cohen v. Bd. of Trs. of the Univ. of the Dist. of Columbia*, 819 F.3d 476, 481 (D.C. Cir. 2016) ("All federal courts are in agreement that the burden [on a 12(b)(6) motion] is on the moving party to prove that no legally cognizable claim for relief exists.") (citing 5B Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1357 (3d ed. 2015)). The Court may therefore treat this argument as waived. Conversely, USPC squarely argues in its Motion to Dismiss and Reply that an *ultra vires* claim cannot co-exist with an APA claim, so the Court must decide this issue. *See* Mot. to Dismiss 12; Reply 9–10. The Court agrees with USPC, and concludes that because plaintiffs have advanced both a well-pleaded APA claim and a duplicative *ultra vires* claim, the latter must be dismissed.

At least two courts in this district have expressed the view, although with differing degrees of certainty, that an *ultra vires* claim and a well-pleaded APA claim cannot both survive a motion to dismiss. *Jafarzadeh*, 270 F. Supp. 3d at 311 (dismissing an *ultra vires* claim because a plaintiff able to assert a claim under the APA "cannot obtain relief . . . through the Court's inherent power to review *ultra vires* agency actions"); *Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 48 (D.D.C. 2020) (expressing "doubt[] that plaintiffs can bring an equitable claim when a statutory cause of action is available to it," but allowing both an *ultra vires* and APA claim to proceed past the motion to dismiss because the defendant had not adequately argued their incompatibility in its

briefs).  Other courts have held the same with respect to other statutory causes of action.  *See Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63, 78 (D.D.C. 2016) (dismissing an *ultra vires* claim in part because plaintiff had a "meaningful and adequate alternative opportunity for review" under the Freedom of Information Act); *Schroer v. Billington*, 525 F. Supp. 2d 58, 65 (D.D.C. 2007) (dismissing an *ultra vires* claim alleging violations of the Library of Congress Act because "the injury the plaintiff alleges may be fully remedied under a statutorily provided cause of action— here, under Title VII").

There are good reasons to reject the co-existence of APA and *ultra vires* claims, even assuming (without deciding) that APA and mandamus claims may proceed in tandem past a motion to dismiss.  First, whereas mandamus has a statutory basis, 28 U.S.C. § 1361, an *ultra vires* claim "seeks the intervention of an equity court where Congress has not authorized statutory judicial review . . . ." *Fed. Express Corp.*, 39 F.4th at 765.  Such an unusual exercise of judicial power should be wielded sparingly, and reserved for situations where no other remedy is available.  *See Schroer*, 525 F. Supp. 2d at 65 (describing *ultra vires* review as a "doctrine of last resort").  Second, unlike in the mandamus context, there is no risk that the "premature" dismissal of an *ultra vires* claim will prejudice a plaintiff who also brings an APA claim.  This is so because *ultra vires* review inherently "represents a more difficult course . . . than would review under the APA." *Trudeau*, 456 F.3d 178, 190 (D.C. Cir. 2006).  Indeed, the D.C. Circuit has recently explained that, if a "plaintiff's claims would have failed under the APA, then those claims necessarily 'could not succeed under' *ultra vires* review." *Fed. Express Corp.*, 39 F.4th at 763 (quoting *Trudeau*, 456 F.3d at 190).  These prudential considerations favor interpreting the *ultra vires* pleading standard to foreclose the mutual survivability of a statutory claim and an *ultra vires* claim, even at the motion to dismiss stage.

This Court therefore holds that, if a plaintiff advances both a well-pleaded APA claim and a duplicative *ultra vires* claim, the *ultra vires* claim must be dismissed upon a motion by the defendants for failure to state a claim.[8]

### D. Plaintiffs Have Not Adequately Proven Numerosity and the Proposed Class Is Overly Broad

Having decided that the Court has jurisdiction to hear the case and that plaintiffs have stated a claim, the Court may now address the plaintiffs' motion for class certification.  The Court will deny this motion without prejudice for two reasons.  First, plaintiffs have not made an adequate demonstration of numerosity by a preponderance of the evidence.  Second, plaintiffs falter on Rule 23's commonality requirement because their class definition is overly broad, sweeping in some class members who are certainly not entitled to relief.

Before reaching these deficiencies, the Court notes that the other requisites of Rule 23 are satisfied.  First, there is no dispute as to typicality, which "is ordinarily met 'if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory.'"  *J.D.*, 925 F.3d at 1322 (quoting 7A Wright & Miller, Fed. Prac. & Proc. § 1764 (4h ed. 2024)).  This standard is clearly met here, as the class representatives allege that they were subject to the exact same course of conduct—the unlawful withholding of a required early termination hearing—as every other class member.  There is no issue of legal or factual importance that distinguishes the plaintiffs' claims from those of the other class members except that they are individually moot which, if anything, implicates adequacy of representation rather than typicality, as discussed next.

---

[8] Because plaintiffs' *ultra vires* claim will be dismissed on this basis, the Court need not consider USPC's alternative argument that an agency's failure to follow its own regulations cannot give rise to an *ultra vires* claim—although it bears mention that, as explained above, USPC's obligation to schedule timely early termination hearings arises under both regulation *and* statute.

Second, the plaintiffs have also satisfied Rule 23(a)'s adequacy of representation requirement.  Defendants argue that, because their individual claims are moot, the named plaintiffs no longer have a stake in the litigation, and therefore cannot adequately represent the interests of their fellow class members with live claims. Opp'n to Mot. to Certify a Class 7.  But to accept this reasoning would make a nullity of the Supreme Court's long-recognized "inherently transitory" exception; the doctrine would only momentarily rescue the class action from mootness before it is dashed against the rocks of Rule 23.   The D.C. Circuit agrees: "[T]he very existence of the inherently-transitory exception disproves any suggestion that the mootness of a plaintiff's claims necessarily demonstrates her inadequacy as a representative." *J.D.*, 925 F.3d at 1313.  Rather, adequacy of representation depends primarily on whether the class representatives' interests are aligned with those of their fellow class members, and whether they and their counsel possess the resources and will to vigorously advocate on behalf of the class. *See Nat'l Ass'n of Reg'l Med. Programs, Inc. v. Mathews*, 551 F.2d 340, 345 (D.C. Cir. 1976).  There is no suggestion that the named plaintiffs' interests are at odds with those of the class, particularly since this 23(b)(2) action seeks non-monetary relief, which rarely engenders the opportunity to benefit oneself by selling out the class. *See New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007) ("Conflicts of interest are rare in Rule 23(b)(2) class actions seeking only declaratory and injunctive relief."); *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 165 (2d Cir. 2001) ("Where class-wide injunctive or declaratory relief is sought in a (b)(2) class action for an alleged group harm, there is a presumption of cohesion and unity between absent class members and the class representatives . . . .").  Nor is there any reason to doubt the caliber and motivation of the plaintiffs' legal representatives.

Third, plaintiffs have satisfied Rule 23(b)(2)'s requirement that final injunctive or declaratory relief be appropriate to the class as a whole. The defendants contend that the Court lacks jurisdiction to grant class-wide relief in the form of parole termination. As acknowledged above, this is correct. But the defendants also argue that the already-discussed alternative remedy of ordering USPC to schedule a termination hearing for each class member would not constitute "final injunctive relief" within the scope of 23(b)(2), because it kicks off a process of individualized hearings that may or may not ultimately result in parole termination. Here, the defendants miss the mark. The touchstone of 23(b)(2) is that the relief be the same as to each member of the class, rather than individually tailored. *Wal-Mart*, 564 U.S. at 360 ("[T]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy . . . . It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant.") (emphasis in original) (quotations omitted). Ordering USPC to comply with the statutory parole hearings timeline would fit this rubric because the scope of the injunction would extend to the commencement of the hearing and no further. The Court's order would not require the USPC to individualize its hearings in any way, or create different rights or obligations depending on an individual parolee's unique circumstances, or dictate the result of any particular termination hearing. A uniform order to hold hearings for every class member therefore fits comfortably within the 23(b)(2) framework.

However, plaintiffs have not shown by a preponderance of the evidence that Rule 23(a)'s numerosity requirement is met. First, the plaintiffs claim that they have met numerosity because of the Edmondson Declaration which, as noted above, attests to the Public Defender Service's interaction with "dozens" of parolees who are allegedly overdue for parole termination hearings. Edmondson Decl. 2, Reply to Mot. to Certify a Class Ex. A, ECF No. 67-1. Second, defendants

argue that the existence of future class members makes joinder impracticable, which is relevant because the D.C. parolee population is large and expected to grow, with "approximately 500 D.C. residents convicted of D.C. Code violations . . . currently serving parole-eligible sentences." Motion to Certify a Class 8.  Finally, defendants argue that numerosity is met because the defendants in this case lack access to the financial and legal resources necessary to prosecute their own cases, which makes joinder impracticable.  *Id.*

These indicia of numerosity are insufficient.  First, while Ms. Edmondson's declaration offers *some* evidence of numerosity, and although it helped lift the complaint into the realm of plausibility, this sole declarant's vague say-so is not enough by itself to clear Rule 23's preponderance-of-the-evidence threshold.  To hold otherwise would be to render the numerosity requirement toothless and belittle Rule 23's demand for a "rigorous analysis." *Wal-Mart*, 564 U.S. at 351.  Second, although the plaintiffs have convincingly alleged that there are many D.C. Code parolees with long parole terms, and that there may well be many more in the future, the class they are attempting to certify does not consist of "all present and future D.C. Code parolees," but rather those whose hearings have been unlawfully withheld.  Plaintiffs have not proffered any non-conjectural evidence that a significant number of these current or future parolees are or will be denied the hearings they are owed.  Third, the Court agrees that many parolees will likely lack the financial resources to pursue legal action on their own, and that in some instances this factor is relevant to the "numerosity" analysis. *See DL v. Dist. of Columbia*, 302 F.R.D. 1, 11 (D.D.C. 2013) (Lamberth, J.) (citing *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)).  But where, as here, the would-be class members have access to institutional resources such as the Public Defender Service, the Court is less inclined to stray from the literal meaning of "numerous."  In order to afford a fair opportunity to cure these deficiencies, plaintiffs are entitled to discovery to

help ascertain the approximate size of their putative class, or at least to give the Court confidence that it is large enough to satisfy Rule 23's numerosity requirement.

Finally, plaintiffs' proposed class stumbles on Rule 23(a)'s requirement of commonality. The plaintiffs contend that there is an essential question of law and fact common to the entire class, to wit, whether the defendants have unlawfully withheld their statutorily guaranteed early termination hearings. Reply to Mot. to Certify a Class 9. But this question is, in fact, not common to the entire class as currently defined. As defendants point out, the class as defined would include many parolees who are certainly not entitled to the potential injunctive relief of a court-ordered hearing, such as those who were previously overdue for a hearing but have had their parole revoked, or who in the last two years received a late hearing at which their request for early termination was denied. Although a class may contain a "de minimis number of uninjured members," *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 135 (D.D.C. 2017), "[a] court . . . should deny class certification where the class definitions are 'overly broad . . . .'" *Id.* at 92 (quoting *Cnty. of Monroe v. Priceline.com, Inc.*, 265 F.R.D. 659, 666 (S.D. Fla. 2010)); *see also Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 191 (D.D.C. 2017) ("[I]f the definition is so broad that it sweeps within it persons who could not have been injured by the defendant's conduct, it is too broad.") (quoting *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009)). Given the lingering uncertainty about the size and composition of the putative class, the Court cannot be assured that these uninjured class members will constitute a small fraction of the class.

Plaintiffs' overly broad class definition runs afoul of Rule 23's commonality requirement, because the Court cannot determine by a preponderance of the evidence that USPC's alleged failure to schedule timely termination hearings gives rise to a common injury affecting all or nearly

all class members. If plaintiffs file another motion for class certification after taking discovery as to the size of the putative class, they should exercise care to define the class to exclude parolees who are not entitled to a hearing.

## IV. CONCLUSION

The named plaintiffs' claims are not moot because they fall under the mootness exception for inherently transitory claims. Therefore, USPC's 12(b)(1) motion to dismiss for lack of subject matter jurisdiction will be **DENIED**.

Plaintiffs have adequately alleged APA claims for which relief can be granted. Plaintiffs have also pleaded a facially plausible claim for relief under the Mandamus Act, and while the Court is uncertain that a mandamus claim and an APA claim can both survive a motion to dismiss, the Court will not dismiss the mandamus claim because USPC has not raised the issue. However, plaintiffs' *ultra vires* claim cannot survive USPC's motion to dismiss alongside their well-pleaded APA claim. Therefore, USPC's 12(b)(6) motion to dismiss for failure to state a claim will be **DENIED** with respect to plaintiffs' claim for relief under the Mandamus Act and their claim for relief under the APA, but **GRANTED** with respect to their claim for *ultra vires* review.

Finally, plaintiffs have not yet shown by a preponderance of the evidence that their putative class is sufficiently numerous to satisfy Rule 23's numerosity requirement. Moreover, plaintiffs have proposed a class definition that sweeps too broadly, and therefore fails to meet Rule 23's commonality requirement. Plaintiffs' motion to certify a class will therefore be **DENIED** without prejudice to afford plaintiffs the opportunity to refine their class definition and take discovery as to the size of their putative class. A separate Order shall issue, pursuant to which the parties shall meet and confer to initiate the discovery process.

Date: July **29**, 2024

_____
Royce C. Lamberth
United States District Judge